CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 25 2006
JOHN F. CORCORAN, CLERK
BY:
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FREDERICK G. ROWE, ) | |
|    Plaintiff, ) | Civil Action No. 7:05CV00449 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| FRED D. HILDEBRAND, et al., ) | By: Hon. Glen E. Conrad |
|    Defendants. ) | United States District Judge |

The plaintiff, Frederick G. Rowe, proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against the Superintendent of the Clarke Fauquier Frederick Winchester Regional Adult Detention Center (hereinafter "CFFW"), Fred D. Hildebrand, and the treating physician at CFFW, Dr. Clifton A. Sheets. The case is presently before the court on the defendants' motion for summary judgment. For the following reasons, the court will grant the defendants' motion.

## Background

At the time this action was filed, the plaintiff was incarcerated at Deep Meadow Correctional Center in Powhatan County. Prior to being transferred to Deep Meadow, the plaintiff was incarcerated at CFFW.

The following facts are taken from the plaintiff's medical records. The plaintiff began experiencing numbness and pain in his right arm and hand while he was incarcerated at CFFW. On August 23, 2004, the plaintiff was examined by a physician's assistant, Robert Dryden, who prescribed 800 milligrams of Ibuprofen. The plaintiff returned to the infirmary with continued complaints of numbness and pain on August 30, 2004. Based on the plaintiff's complaints, he was taken off of the Ibuprofen and placed on Naprosyn and Flexeril. The physician's assistant examined the plaintiff again on September 17, 2004. At that time, the plaintiff was placed on the

list for cervical spine x-rays. Those x-rays, which were taken on September 27, 2004, revealed minimal arthritic changes in the lower cervical spine.

The plaintiff was examined by Dr. Sheets on November 4, 2004. Dr. Sheets prescribed Prednisone for the plaintiff's continued problems and placed the plaintiff in a soft cervical collar. On November 29, 2004, Dr. Sheets ordered an MRI of the plaintiff's cervical spine. The MRI, which was taken on December 20, 2004, revealed a mild diffuse disc bulge at C4-5, with some mild foraminal narrowing, as well as a C5-6 left paracentral disc protrusion. Based on the findings of the MRI, Dr. Sheets referred the plaintiff to a neurosurgeon on December 22, 2004.

The plaintiff was examined by Dr. Allen Fergus, a neurosurgeon at Winchester Neurological Consultants, Inc., on January 28, 2005. In a letter written to Dr. Sheets that same date, Dr. Fergus noted that the plaintiff had two herniated disks, for which he recommended an epidural steroid injection. The plaintiff received the injection on February 2, 2005. On March 3, 2005, the plaintiff advised Dr. Fergus that he felt ten percent better from the injection. The plaintiff was given the choice of receiving a second injection or undergoing a two-level anterior cervical diskectomy and fusion. After examining the plaintiff again on March 24, 2005, Dr. Fergus determined that the plaintiff should undergo surgery. The surgery was scheduled for April 13, 2005.

On April 6, 2005, the plaintiff completed the pre-operation lab work and testing. However, rather than undergoing surgery on April 13, 2005, as originally scheduled, the plaintiff was transferred to Deep Meadow. As a result, the plaintiff's surgery was postponed.[1]

---

[1] After the plaintiff was transferred to Deep Meadow, the prison's physician referred him to a neurosurgeon at MCV. The plaintiff was subsequently scheduled for surgery on August 2, 2005. Although the plaintiff was transported to MCV on that date, the surgery was cancelled by the neurosurgeon due to an emergency. The plaintiff ultimately underwent surgery on September 29, 2005.

2

The plaintiff filed this action against the defendants on July 14, 2005. The plaintiff alleges that the defendants acted with deliberate indifference to his serious medical needs by deciding to postpone the plaintiff's surgery and transfer him to Deep Meadow. The plaintiff alleges that he suffered months of unnecessary pain as a result of the delay.

## Standard of Review

The case is presently before the court on the defendants' motion for summary judgment. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In accordance with Rule 56(c), summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## Discussion

In order to establish a constitutional violation for inadequate medical treatment, an inmate must show that jail officials to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The test for deliberate indifference involves both an objective and a subjective component. The alleged deprivation must be, objectively, "sufficiently serious," and the jail officials must know of and disregard an excessive risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834-837 (1994). Inadvertent failure to provide treatment, negligent diagnosis, and medical

3

malpractice do not present constitutional deprivations. Id. at 105-06. Likewise, questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Additionally, a medical treatment claim cannot be brought against a supervisory official unless the plaintiff shows that the supervisory official was personally involved with the denial of medical treatment, deliberately interfered with the jail physician's performance, or tacitly authorized or was indifferent to the physician's constitutional violations. Miltier v. Beorn, 896 F.2d 848, 851-852 (4th Cir. 1990).

In the present case, the defendants argue that they did not act with deliberate indifference to the plaintiff's medical needs when they determined that the plaintiff could be transferred to Deep Meadow, and that his surgery could be postponed. To support their motion for summary judgment, the defendants have provided an affidavit from Dr. Sheets. Dr. Sheets alleges that a few days prior to the date on which the plaintiff's surgery was originally scheduled, he was informed that the plaintiff was going to be transferred to Deep Meadow. Dr. Sheets alleges that Superintendent Hildebrand asked him whether the plaintiff's surgery could be postponed until after the transfer took place. Dr. Sheets alleges that he consulted with Dr. Fergus to obtain his opinion regarding the postponement of the surgery. According to Dr. Sheets, Dr. Fergus was of the opinion that the surgery could be postponed until the plaintiff was transferred to Deep Meadow, and that the delay would have no adverse effects on the plaintiff's condition. Dr. Sheets concurred with Dr. Fergus's opinion. The defendants argue that the fact that Superintendent Hildebrand consulted with Dr. Sheets prior to making a decision regarding the plaintiff's transfer demonstrates that he did not knowingly disregard an excessive risk to the plaintiff's health. Likewise, the defendants argue that Dr. Sheets's decision to consult with the

4

plaintiff's neurosurgeon negates any claim of deliberate indifference, and that the plaintiff's disagreement with the physicians' opinions is not actionable under § 1983.

In response to the defendants' motion for summary judgment, the plaintiff submitted a copy of an email message summarizing a purported phone conversation regarding the plaintiff's need for surgery. The email message states as follows:

> Wendy Robinson called from CFW Regional Jail 4/7/2006. Pt. is scheduled for sx next week and the state system contacted them and have a bed for him. They want to transfer him to state system now. She is asking if pt. needs to have sx now or if he can wait and have sx where state facility is located.
>
> I spoke to Dr. Fergus and he said that the pt. needs the sx now.
>
> I notified Wendy @ 665-6374.

The plaintiff argues that the email message creates a genuine issue of material fact as to whether Dr. Fergus advised Dr. Sheets that the plaintiff's surgery could be postponed.

The defendants filed a reply to the plaintiff's response on March 14, 2006. The defendants argue that the email message is unauthenticated, that there is insufficient information to know the actual identities of the parties to the referenced phone conversation, and that the email message does not contradict Dr. Sheets's sworn statement regarding the content of his own conversation with Dr. Fergus.

By order entered April 21, 2006, the court provided the plaintiff thirty days in which to provide appropriate documentation to authenticate the challenged exhibit, or to provide any additional records or reports from Dr. Fergus regarding his need for back surgery. The plaintiff subsequently filed additional medical records from Winchester Neurological Consultants, Inc., including a transcription pertaining to Dr. Fergus's conversation with Dr. Sheets. The transcription states as follows:

5

> TELEPHONE CONVERSATION: I just had a discussion with Dr. Sweet [sic] at the Frederick County Corrections Facility. He is the facility physician. Apparently Mr. Rowe has been requested to be transferred to the State Penitentiary for further judiciary action. His inquiry was whether Mr. Rowe required urgent or emergent surgery for his current problem. Mr. Rowe does not have any weakness or other neurologic deficit with the exception of radiculopathy that would make this an urgent or emergent situation. He therefore would not need to have the surgery done on 4/13/05. This is however, a condition that should be addressed upon his transfer to the State Penitentiary. I would be happy to provide any medical information in this case.
>
> Allan H. Fergus, M.D.
> AHF:jyw

Based on this transcription, the plaintiff now contends that the defendants "got [Dr. Fergus] to change his mind about [the plaintiff's] need for surgery."

Having reviewed the record, the court concludes that there is no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law. It is undisputed that Superintendent Hildebrand conferred with Dr. Sheets prior to transferring the plaintiff to Deep Meadow, and that Dr. Sheets was of the opinion that the plaintiff's surgery could be postponed. Moreover, the court agrees with the defendants that the email message submitted by the plaintiff does not contradict Dr. Sheets's sworn statement that he personally conferred with Dr. Fergus, and that Dr. Fergus advised him that the plaintiff's surgery could be postponed until after the plaintiff was transferred to Deep Meadow. Dr. Sheets's account of his conversation with Dr. Fergus is supported by the transcription that was recently submitted by the plaintiff. While the evidence, taken in the light most favorable to the plaintiff, could be read to indicate that Dr. Fergus vacillated in his opinion regarding the plaintiff's need for surgery, there is absolutely no evidence that Dr. Sheets or anyone else coerced Dr. Fergus to change his mind.

As a supervisory official, Superintendent Hildebrand was entitled to rely on the professional judgment of the trained medical personnel. See Miltier, 896 F.2d at 854. Although

6

Case 7:05-cv-00449-GEC-mfu Document 49 Filed 05/25/06 Page 6 of 7 Pageid#: 336

the plaintiff may disagree with the physicians' opinions regarding whether he had an urgent need for surgery, questions of medical judgment are not subject to judicial review. See Russell, 528 F.2d at 319. The court agrees with the defendants that the plaintiff has failed to show that they knew of and disregarded an excessive risk to the plaintiff's health or safety.[2]

## Conclusion

For the reasons stated, the court will grant the defendants' motion for summary judgment. The Clerk is directed to send certified copies of this opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

**ENTER**: This 25th day of May, 2006.

_____
United States District Judge

---

[2] The court notes that it is undisputed that once the plaintiff was transferred to Deep Meadow, neither Superintendent Hildebrand nor Dr. Sheets had any control over the scheduling of the plaintiff's surgery.

7